Haley A. Nelson
Special Assistant Attorney General
Risk Management & Tort Defense Division
P.O. Box 200124
Helena, MT  59620-0124
Phone: (406) 444-0945
Fax: (406) 444-2592
HaleyNelson@mt.gov

*Attorney for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BRETT ALLEN TURNQUIST,<br><br>Plaintiff,<br><br>vs.<br><br>CANDACE BAKER, ET AL.,<br><br>Defendants. | Cause No. 6:16-CV-00073-DLC-JTJ<br><br>DEFENDANTS' RESPONSE BRIEF IN OPPOSITION PLAINTIFF'S REQUEST FOR IMMEDIATE COURT INTERVENTION |

Plaintiff Brett Turnquist's August 29, 2016 filing, "Request for Immediate Court Intervention," (Doc. 6), should be denied because Plaintiff has failed to demonstrate that a preliminary injunction or a temporary restraining order is necessary to prevent irreparable harm. Furthermore, Plaintiff's claims may be moot because Plaintiff has been furloughed from Montana State Prison (MSP).

PAGE 1 OF 16

Defendants, pursuant to the Order of the United States Magistrate Judge of October 18, 2016 (Doc. 12), respond in opposition to Plaintiff's Motion.

## LEGAL STANDARDS

Plaintiff's underlying Complaint alleges that Defendants have denied him medical and mental health care in violation of Plaintiff's Eighth Amendment Rights. (Doc. 2; Doc 2-1.) To prevail on his claims, Plaintiff must prove that the Defendants have shown deliberate indifference to his serious medical needs. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976)).

In Plaintiff's Request for Immediate Court Intervention (Doc. 6), Plaintiff appears to be asking for a preliminary injunction. The standards for issuing a temporary restraining order or a preliminary injunction are identical.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; citation omitted).  The movant's burden is

to "demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).

There are also statutory limits on the scope of a preliminary injunctive relief courts may grant to inmates seeking such relief against prison officials.

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief….

18 U.S.C. § 3626(a)(2); *see also Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000) (discussing limits); *Gomez v. Vernon*, 255 F.3d 1118, 1129 (9th Cir. 2001).

## ARGUMENT

**I.    PLAINTIFF HAS PROVIDED NO PROOF THAT HIS FOUR SEPARATE CLAIMS REGARDING HIS GABAPENTIN MEDICATION, MEDICAL KITES, COMMUNICATION WITH HIS PSYCHIATRIST, AND HEARING AIDS WILL RESULT IN IRREPARABLE HARM TO PLAINTIFF IF THE COURT DOES NOT INTERVENE. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF UNDER *WINTER* FOR ANY OF THE FOUR CLAIMS.**

Plaintiff makes four claims against Defendants: his prescription for Gabapentin was discontinued in retaliation for filing this lawsuit; MSP staff ignore

his medical kites regarding headaches and pain; he has been denied access to Psychiatrist Nielsen; and he has been denied a proper hearing aid. (Doc. 6.) Plaintiff has failed to demonstrate any of the four factors outlined in *Winter* necessary for the court to grant a preliminary injunction for any of these four claims. Plaintiff's requested relief should be denied for each of the following four allegations in his Request for Immediate Court Intervention.

### a. Plaintiff's prescription for Gabapentin was not discontinued in retaliation for filing this lawsuit.

As of November 30, 2016, Plaintiff still has a prescription for Gabapentin current through January 1, 2017. (Ex. 1, Rx Nov. 2016.) Plaintiff was first prescribed Gabapentin by Dr. Piranian on November 5, 2014. (Ex. 2, Rx Nov. 2014.) On July 8, 2016, the dose was increased. According to Plaintiff's medication records, his prescription ran out on August 7, 2016, and it was renewed on August 22, 2016. (Ex. 3, Rx Aug. 2016.)

On September 13, 2016, Plaintiff kited medical requesting a higher dose of Gabapentin, stating that he had pain in his joints due to arthritis. Staff responded that Plaintiff was seen by Dr. Kohut on September 7, 2016, and that the dose of Gabapentin would not be increased at this time. (Ex. 4, Med. Kite.) On October 24, 2016, Plaintiff's dose of Gabapentin was increased to 600 mg tablets three times daily. As of November 30, 2016, Plaintiff still had a current prescription for

600 mg of Gabapentin to be taken three times daily through January 21, 2017. (Ex. 1, Rx Nov. 2016.)

Plaintiff has failed to demonstrate by clear evidence that any change in his prescription for Gabapentin is necessary under the four-part test in *Winter*. First, Plaintiff's Request has not demonstrated that he will succeed on the merits of his underlying case. Plaintiff's Request is simply more allegations against the defendants and requests for immediate relief; Plaintiff provides no evidence supporting his underlying claims that his Eighth Amendment rights have been violated. (Doc. 2, Doc. 2-1.)

Second, Plaintiff has not proven that he is likely to suffer irreparable harm in the absence of preliminary relief. Although Plaintiff's prescription ran out for a short time in August 2016 due to a change of prescribing providers (Physician's Assistant Lance Griffin, P.A. for Nurse Practitioner Natasha Haines) (Ex. 3, Rx Aug. 2016.), Plaintiff currently has a prescription for a higher dose of this medication than he was originally prescribed (Ex. 1, Rx Nov. 2016.) This also proves the third element of the *Winter* test: the balance of equities do not tip in Plaintiff's favor because he has a current prescription of the medication at a higher dose than before.

Fourth, it is not in the public interest to allow a patient to choose what prescription medication they take, or the dosage of that medication, without recommendation and consent of a provider. Prescription drugs are highly regulated by both state and federal laws both inside and outside correctional facilities. *See e.g.*, Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq.; 21 U.S.C. § 829, Prescriptions. Furthermore, this is not a narrowly tailored solution as required by 18 U.S.C. § 3626(a)(2), and allowing any inmate to choose their medication would adversely impact the operation of MSP.

> **b.      Medical staff regularly responded to Plaintiff's kites regarding pain and headaches, and Plaintiff is regularly seen by MSP providers**.

Plaintiff's kites received regular responses, and Plaintiff was regularly seen by medical staff. Plaintiff alleges that he was punched in the back of the head and on the lip on May 7, 2016. That day, Plaintiff had an emergency evaluation by nursing staff. Staff reported that they could see no markings indicating the assault, and that Plaintiff was calm, alert, and he reported feeling dizzy. Plaintiff was instructed to take Excedrin and to kite if he had further problems. (Ex. 5, Emergency Flow.) Plaintiff saw providers at the MSP Infirmary on May 19, 2016 and on June 13, 2016, but his chart does not indicate complaints of headache or other head pain at those visits. (Ex. 6, Progress Notes p. 7.)

Plaintiff kited medical at least three more times complaining of headaches and other ailments on the following dates: July 14, 2016; July 27, 2016; and August 25, 2016. Each time, Plaintiff was evaluated by nursing staff and referred to a provider. (Ex. 7, Kites and Protocols.)

On July 18, 2016, Plaintiff met with Dr. Kohut for complaints of pain over his left eye, and Plaintiff reported getting some relief from taking Excedrin. (Ex. 6, Progress Notes p. 5.) On September 7, 2016, Plaintiff saw Dr. Kohut again with complaints of pressure in head, light sensitivity, and pain on left side of his forehead related to the alleged assault in May 2016. Dr. Kohut recommended that Plaintiff increase his dose of Excedrine. (Ex. 6, Progress Notes p. 4.) On September 19, 2016, Plaintiff again saw Dr. Kohut and complained of head pressure among other ailments. (Ex. 6, Progress Notes p. 3.)

Plaintiff has failed to clearly demonstrate that his medical kites are being ignored, or that any immediate court intervention is necessary for care of his headaches or pain. Again, Plaintiff has failed to demonstrate that he will prevail on the merits of his underlying lawsuit. *See Supra* § I.a. Second, Plaintiff has provided no evidence that he will suffer irreparable harm because he has been regularly seen by medical staff for a variety of complaints, including headaches. Third, the balance of equities does not tip in Plaintiff's favor because Plaintiff's kites were

not ignored, as demonstrated above. Finally, Plaintiff has provided no evidence to demonstrate how his requested relief is in the public interest. Plaintiff regularly used the kite system to communicate with medical staff and providers, and received regular responses and care. Any changes to the kite system would interfere with administration of MSP, and it is not narrowly tailored relief as required by 18 U.S.C. § 3626(a)(2).

> **c.     Plaintiff regularly communicated with Psychiatrist Dr. Nielsen, and other mental health staff, through MSP's kite system.**

Plaintiff has seen Dr. Nielsen, MD, for psychiatric treatment on June 17, 2016; July 22, 2016; September 9, 2016; and on October 14, 2016. (Ex. 8, Psych. Notes., pp. 1-4.) Between appointments, Plaintiff regularly communicated with Dr. Nielsen, and other mental health staff, through MSP's kite system, described in Offender/Staff Communication Policy, or "Kite System." (Ex. 9, MSP Policy 3.3.5.)

On July 12, 2016, Plaintiff kited Jami Eads, then the Mental Health Manager at MSP, stating "I need to be able to communicate with the Psychiatrist I seen on the 6-13-16[.]" Plaintiff stated that he could not remember the psychiatrist's name and asked for an address for the psychiatrist. (Ex. 10, MHR, p. 1.) Eads replied to Plaintiff's kite on July 14, 2016, stating that "You must communicate with the provider through the kite system, like all other staff members." Eads also explained

that pertinent kites are sent to providers, and MSP does not allow direct mailing to staff.

Plaintiff kited Eads on both July 18, 2014, and on August 1, 2016, stating that he wanted to contact the Psychiatrist he saw. Eads responded that Plaintiff saw Dr. Nielsen, and they do not give out providers direct contact information. Eads explained that Plaintiff could use the kite system to communicate with staff, and relevant kites were passed on to providers such as Dr. Nielsen. (Ex. 10, MHR, pp. 2-3.)

On August 15, 2016, Plaintiff kited Dr. Nielsen complaining of nightmares and hearing voices. Eads responded on August 22, 2016, that his concerns were shared with Dr. Nielsen. (Ex. 10, MHR, p. 4.) On August 30, 2016, Plaintiff kited "Mental Health Staff" again complaining of nightmares and asking to communicate with Dr. Nielsen. Eads responded on September 2, 2016, that Plaintiff's concerns were passed on to Dr. Nielsen, and that Plaintiff was scheduled to see him soon. (Ex. 10, MHR, p. 5.) Plaintiff saw Nielsen again on September 9, 2016, and on October 14, 2016. (Ex. 8, Psych. Notes., pp. 3-4.)

Plaintiff has not demonstrated how the kite system was in any way inadequate to communicate his needs to Dr. Nielsen. Again, Plaintiff has failed to demonstrate that he will prevail on the merits of his underlying lawsuit. *See Supra*

§ I.a. Second, Plaintiff has made no showing that he will suffer irreparable harm if he is required to use the kite system to communicate with staff at MSP, who respond to his kites and pass on relevant information to other staff members. Third, the balance of equities does not tip in Plaintiff's favor. The Offender/Staff Communication Policy, (Ex. 9, MSP Policy 3.3.5), allows for communication between staff and inmates while protecting staff's privacy, such as staff's physical addresses outside the prison. It also creates a record of inmate's requests to staff. Fourth, Plaintiff has provided no evidence that the public interest would be served in any way by a change to MSP's Kite System. Finally, Plaintiff's requested relief would interfere with the internal administration of the prison, and it is not narrowly tailored relief as required by 18 U.S.C. § 3626(a)(2).

     **d.**    **Plaintiff refused the hearing aid that was prescribed by an audiologist for his specific condition, and he has provided no evidence to prove that a different hearing aid would be better for his condition.**

On November 3, 2015, Plaintiff had a hearing evaluation with audiologist Pat Ingalls at Highland Hearing Center in Butte and was prescribed a hearing aid. (Ex. 11, Highland Hearing, p. 1-2.) Plaintiff received his hearing aid on November 6, 2015. (Ex. 6, Progress Notes, p.12.) On November 12, 2015, Plaintiff followed up at the MSP Infirmary where Plaintiff stated the hearing aid was not working properly. (Ex. 6, Progress Notes, p. 12.) On November 23, 2015, Plaintiff had an

appointment with Hearing Aid Dispenser Kathy Walter at Highland Hearing to reprogram his hearing aid, during which Plaintiff practiced proper insertion techniques for the hearing aid, and Walter addressed Plaintiff's complaint of excessive earwax. Walter reported "He asked about an in-the-ear H/A, but with his wax issue it was all solved."  (Ex. 11, Highland Hearing, p. 3.)

On December 1, 2015, Plaintiff kited medical stating that his hearing aid was making a noise "like a leaky air hose" and that it did not fit properly. (Ex. 12, Hearing Kites, p. 1.) Staff replied on December 7, 2015, that "the hearing [aid] you have is the best one for you. Please take some more time to adjust to the fit."

On December 8, 2015, Plaintiff kited medical stating: "You can have this no good piece of shit hearing aid back cause [sic] I have tried to adjust it but you all seem to want to make lame excuses for not wanting to help. So here is the piece of shit." staff replied that profanity was not acceptable in kites, and that:

> Your request for an inner ear hearing aid is not approved and is ill advised by the specialist due to your particular condition. If you do not want the hearing aid you were provided, please sign attached refusal. This hearing aid has been checked and deemed in complete functioning condition.

DEFENDANTS' RESPONSE BRIEF IN OPPOSITION                    PAGE 11 OF 16
TO PLAINTIFF'S REQUEST FOR IMMEDIATE COURT INTERVENTION

(Ex. 12, Hearing Kites, p. 2.) On December 10, 2015, medical staff initiated a Refusal of Treatment form, stating that Plaintiff refused his hearing aid. Plaintiff did not return a signed copy of the form. (Ex. 13, Refusal of Hearing Aid.)

On July 25, 2016, seven months after refusing his hearing aid, Plaintiff kited medical stating he wanted to communicate with the "Special Needs Nurse" about his hearing aid. He stated that he was having a lot of trouble understanding others in his computer class and in everyday conversations. On July 26, 2016, medical staff responded: "You received a hearing aid and you returned it to the infirmary saying that you didn't want it. You have been out to audiology and they checked it and found the hearing aid to be in working order. Do you want it now?" (Ex. 12, Hearing Kites, p. 3.)

On July 28, 2016, Plaintiff kited Medical stating as follows:

I returned the Hearing Aid because it was not sitting properly in my - inner ear canal for the fact I have excessive ear wax & a Skin Allergy causing the hearing Aid to make a noise like a leaky air hose would make [sic] causing me to be able to hear at all [sic][.] I asking for the Hearing Aid that does not sit so far in my ear because of the ear wax & skin Allergy & I was denied it so if I am still denied it I will add it to my lawsuit[.]

(Ex. 12, Hearing Kites, p. 4.) On November 23, 2016, Melissa Scharf, Director of Nursing at MSP, informally visited with Plaintiff about his hearing aid, and she explained that she would find out about the hearing aid. (Ex. 14, Nurse Note.)

Plaintiff had returned his hearing aid with his kite dated December 8, 2015, and staff initiated the Refusal of Treatment form on December 10, 2015. (Ex. 13, Refusal of Hearing Aid.)

Plaintiff has provided no evidence to support his claim that a different hearing aid is better for his specific needs. Again, Plaintiff has failed to demonstrate that he will prevail on the merits of his underlying lawsuit. *See Supra* § I.a. Second, Plaintiff has not demonstrated that he will suffer irreparable harm if he is not given a different hearing aid. Third, the balance of equities does not tip in Plaintiff's favor. Plaintiff was referred to an outside audiologist at Highland Hearing who prescribed a hearing aid, and Plaintiff later had the hearing aid checked and adjusted. Rather than ask for another adjustment, he refused them and insisted his needed a different type of hearing aid. Finally, it is not in the public interest to allow patients to choose their preference for medical devices over the opinion of a trained professional.  To do so interferes with the internal operations of the prison, and it is not narrowly tailored relief as required by 18 U.S.C. § 3626(a)(2).

## II.    PLAINTIFF'S DEMANDS FOR INJUNCTIVE RELIEF MAY BE MOOT BECAUSE PLAINTIFF IS NO LONGER AT MSP.

On September 30, 2016, Plaintiff appeared before the Board of Pardons and Parole, and was granted parole. (Ex. 15, Offender Information.) On December 14,

DEFENDANTS' RESPONSE BRIEF IN OPPOSITION                    PAGE 13 OF 16
TO PLAINTIFF'S REQUEST FOR IMMEDIATE COURT INTERVENTION

2016, Plaintiff was transferred to Kalispell and placed on furlough. (Ex. 16, Location Report; Ex.17, Conweb Report.) Furlough status typically lasts ten days, during which time an inmate granted parole must find appropriate housing, employment, and meet any other requirements set out by the Board of Pardons and Parole. If an inmate meets the requirements, they are placed on parole. If the inmate does not meet the requirements, they may be granted extensions of time or be sent back to an institution. (Ex. 18, DOC Policy No. 4.6.6, Furlough Program; Ex. 19, P&P Procedure No. 150-8, Furlough Program.) As of December 19, 2016, Plaintiff is still on furlough status. (Ex. 17, Conweb Report.)

Depending on the outcome of Plaintiff's furlough status, Plaintiff's claims for injunctive relief may be moot. In *Pride v. Correa*, 719 F.3d 1130, 1132 (9th Cir. 2013), an inmate at a California prison alleged denial of medical treatment for his serious medical needs, and he sought both damages and injunctive relief. "When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim [for injunctive relief] is moot." *Pride*, 719 F.3d at 1138 (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991)). "In such circumstances, the inmate's claim is moot because he no longer is subjected to [the

allegedly unconstitutional] policies." *Pride*, 719 F.3d at 1138 (internal citations and quotation marks omitted).

Plaintiff has been transferred from MSP, and the relief he requests can no longer be granted. Plaintiff is no longer under the care of any MSP healthcare providers or staff for his medication, pain, mental health, or special needs. Plaintiff's claims for injunctive relief against MSP medical and mental healthcare staff may be moot if Plaintiff does not return to MSP.

## CONCLUSION

Plaintiff's "Request for Immediate Court Intervention" should be denied because Plaintiff has failed to prove that he will suffer irreparable harm without court intervention regarding his prescription medication, his medical care, MSP's kite system, or his hearing aid. Furthermore, because Plaintiff is no longer at MSP, his claims may become moot.

Dated this ___19___ day of December 2016.

RISK MANAGEMENT & TORT DEFENSE DIVISION
P.O. Box 200124
Helena, MT 59620-0124


/s/ Haley A. Nelson
Haley A. Nelson
Special Assistant Attorney General
*Attorney for Defendants*

DEFENDANTS' RESPONSE BRIEF IN OPPOSITION                    PAGE 15 OF 16
TO PLAINTIFF'S REQUEST FOR IMMEDIATE COURT INTERVENTION

# CERTIFICATE OF SERVICE

I hereby certify that, on *December 19, 2016*, a copy of the foregoing **Response** was served on the following persons by the following means:

| | |
|---|---|
| \_\_\_\_1\_\_\_\_ | CM/ECF |
| _____ | Hand Delivery |
| \_\_\_\_2\_\_\_\_ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.   Clerk, U.S. District Court, Helena Division

2.   Brett Allen Turnquist, DOC #2109913
     c/o Kalispell Probation and Parole
     575 Sunset Blvd
     Kalispell, MT 59901

     /s/ Haley A. Nelson
     Special Assistant Attorney General
     Risk Management & Tort Defense Division
     P.O. Box 200124
     Helena, MT 59620-0124
     *Attorney for Defendants*